IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
------------------------------------------------------x
                                                      :
ITT CORPORATION ET AL.                                :     3:12 CV 38 (JAM)
                                                      :
v.                                                    :
                                                      :
TRAVELERS CASUALTY & SURETY CO.                       :     DATE: JANUARY 27, 2017
                                                      :
------------------------------------------------------x
```

RULING ON PENDING DISCOVERY ISSUES

I.  PROCEDURAL HISTORY

On January 6, 2012, plaintiffs ITT Corporation ["plaintiff ITT"] and Goulds Pumps Inc. ["plaintiff Goulds"] commenced this lawsuit against defendant Travelers Casualty and Surety Company, formerly known as Aetna Casualty and Surety Company, with respect to nineteen Excess Overlayer Indemnity policies ["XN policies"] issued to plaintiff ITT with more than $245 million in coverage and two XN excess insurance policies issued to plaintiff Goulds with more than $50 million in coverage; plaintiffs allege that defendant has changed its interpretation of the XN policies to constructively eliminate the coverage afforded to plaintiffs under their XN policies. (Dkt. #1).  The complaint contains three counts: Count One requests declaratory and injunctive relief regarding coverage; Count Two alleges a violation of the Connecticut Unfair Trade Practices Act ["CUTPA"], CONN. GEN. STAT. §42-110a et seq.; and Count Three alleges procedural bad faith in the handling of plaintiffs' asbestos claims in violation of the common law of Connecticut.  On June 12, 2014, defendant filed its answer and affirmative defenses.  (Dkt. #103).

On March 24, 2014, the case was transferred from U.S. District Judge Robert C. Chatigny to U.S. District Judge Jeffrey A. Meyer (Dkt. #93); Judge Chatigny had referred the

case to U.S. Magistrate Judge Donna F. Martinez for discovery.  (Dkt. #26).  Suffice it to say, there have been multiple discovery disputes throughout the duration of this lawsuit.  (See, e.g., Dkts. ##17, 19, 25, 29-30, 33, 50-51, 61, 62, 67-68, 82-83, 85-87, 89-90, 94-95, 97-99, 100-02, 105-07, 111-12, 114-19, 121-29, 134, 145, 147-49, 151-52, 154-57, 160-74, 176-78).  On February 21, 2013, Judge Chatigny stayed this lawsuit under the Colorado River abstention doctrine (Dkt. #78), pending a decision by the California Superior Court regarding the proper interpretation of defendant's excess insurance policies in Cannon Electric, Inc. et al. v. Affiliated FM Insurance Co. et al., Case No. BC 290354 ["Cannon"].  On March 17, 2014, Judge Chatigny lifted the stay to the extent that plaintiffs could engage in "time sensitive" discovery, after the California Superior Court filed a thirty-eight page Statement of Decision in favor of the plaintiffs there.  (Dkt. #92; see also Dkt. #83).  On June 22, 2016, the California Courts of Appeal affirmed this decision. (Dkts. ##138-39, 142).  One month later, on July 20, 2016, Judge Meyer further lifted the stay to permit third party discovery. (Dkt. #145).

Under the latest Scheduling Order, filed July 26, 2016 (Dkt. #149), all discovery is to be completed by May 31, 2017.  On October 4, 2016, the parties filed status reports regarding their pending discovery disputes.  (Dkts. ##177-78).  Twenty-three days later, on October 27, 2016, Judge Meyer referred this file to this Magistrate Judge for discovery.  (Dkt. #181).  Four days thereafter, this Magistrate Judge filed an order (Dkt. #182), requiring the parties to forward copies of the Requests for Admission, Interrogatories and Document Requests, and objections thereto, in dispute, as well as letters detailing any other outstanding discovery disputes.  Consistent with this order, defendant filed its supplemental

letter on November 14, 2016, along with eighteen exhibits. (Dkts. ##183-84).[1] Plaintiffs also forwarded a letter, dated November 14, 2016, along with twenty-nine exhibits.[2]

On December 22, 2016, plaintiffs and defendant forwarded additional letters

---

[1] These exhibits were as follows: copy of defendant's Response to Plaintiffs' Requests for Admission Nos. 1-4, dated October 3, 2016 (Exh. 1); copy of defendant's Supplemental Response to Plaintiffs' Requests for Admission Nos. 1-27, dated October 10, 2016 (Exh. 2); copy of defendant's Supplemental Response to Plaintiffs' Document Demands Nos. 1-2, dated October 7, 2016 (Exh. 3); copy of defendant's Supplemental Response to Plaintiffs' Requests for Admission Nos. 1-6, dated October 10, 2016 (Exh. 4); copy of defendant's Supplemental Response to Plaintiffs' Requests for Admission Nos. 1-36, also dated October 10, 2016 (Exh. 5); copy of defendant's Supplemental Response to Plaintiffs' Requests for Admission Nos. 1-37, also dated October 10, 2016 (Exh. 6); copy of defendant's [Third] Supplemental Response to Plaintiffs' Requests for Admission Nos. 1-6, dated October 17, 2016 (Exh. 7); and copy of defendant's Second Supplemental Response to Plaintiffs' Requests for Admission Nos. 1-26, dated November 4, 2016 (Exh. 8).

[2] These exhibits were as follows: copy of plaintiff ITT's First Set of Interrogatories and Document Requests, dated May 2014 (Exh. 1); copy of Defendant's Response to First Set of Interrogatories and Document Requests, dated September 25, 2014 (Exh. 2); copy of Plaintiff ITT's Requests for Admission, dated July 28, 2016 (Exh. 3); copy of Defendant's Response to Plaintiffs' Requests for Admission, dated September 1, 2016 (Exh. 4); copy of Defendant's Supplemental Response to Plaintiffs' Requests for Admission, dated October 10, 2016 (Exh. 5); copy of Defendant's Second Supplemental Response to Plaintiffs' Requests for Admission, dated November 4, 2016 (Exh. 6); copy of Plaintiff ITT's Requests for Admission, dated July 29, 2016 (Exh. 7); copy of Defendant's Response to Plaintiffs' Request for Admissions, dated September 1, 2016 (Exh. 8); copy of Defendant's Supplemental Response to Plaintiffs' Request for Admission, dated October 7, 2016 (Exh. 9); copy of Defendant's Supplemental Response to Plaintiff's Requests for Admission, dated October 17, 2016 (Exh. 10); copy of Defendants' Supplemental Response to Plaintiffs' Requests for Admission, dated November 3, 2016 (Exh. 11); copy of Plaintiff ITT's Requests for Admission, dated August 2, 2016 (Exh. 12); copy of Defendant's Response to Plaintiff's Requests for Admission, dated September 6, 2016 (Exh. 13); copy of Defendant's Supplemental Response to Plaintiffs' Requests for Admission, dated October 10, 2016 (Exh. 14); copy of Plaintiff ITT's Requests for Admission, dated August 5, 2016 (Exh. 15); copy of Defendant's Response to Plaintiffs' Requests for Admission, dated September 9, 2016 (Exh. 16); copy of Defendants' Supplemental Response to Plaintiffs' Requests for Admission, dated October 10, 2016 (Exh. 17); copy of Plaintiff ITT's Document Demands, dated August 5, 2016 (Exh. 18); copy of Defendant's Response to Plaintiffs' Document Demands, dated September 9, 2016 (Exh. 19); copy of Defendant's Supplemental Response to Plaintiffs' Document Demands, dated October 7, 2016 (Exh. 20); copy of Plaintiff ITT's Requests for Admission, dated August 17, 2016 (Exh. 21); copy of Defendant's Response to Plaintiffs' Requests for Admission, dated September 19, 2016 (Exh. 22); copy of Defendant's Supplemental Response to Plaintiffs' Requests for Admission, dated October 10, 2016 (Exh. 23); copy of Plaintiff ITT's Requests for Admission, dated August 31, 2016 (Exh. 24); copy of Defendant's Response to Plaintiffs' Request for Admission, dated October 3, 2016 (Exh. 25); copy of Plaintiff ITT's Requests for Admission, dated October 5, 2016 (Exh. 26); copy of Defendant's Response to Plaintiffs' Requests for Admission, dated November 7, 2016 (Exh. 27); copy of Plaintiff ITT's Document Demands, dated October 12, 2016 (Exh. 28); and copy of Defendant's Privilege Log (Exh. 29).

summarizing the parties' discovery disputes (Dkts. ##185, 187-88); after the discovery conference was held on January 4, 2016, defendant forwarded a supplemental letter one week later,[3] as to which plaintiffs responded two days later. (Dkts. ##186, 189-90).

Plaintiffs' letter, dated December 22, 2016 (Dkt. #188), lists the specific discovery items at issue and outlined the four topics upon which they seek discovery: (1) evidence that in 2009 Travelers advanced a coverage position that contradicted Aetna's intent on what the XN policies cover; (2) evidence that Travelers knew that it had no reasonable factual basis to assert that Aetna's underwriters did not intend to cover plaintiffs' product liability loss for losses that exceeded the aggregate limits of the policies beneath the XN policies; (3) evidence that Travelers advanced this position as a general business practice, i.e., not just with plaintiffs, but with other policyholders; and (4) evidence of Travelers' financial motivation to engage in bad faith conduct. (Id. at 2-3). Plaintiffs dispute defendant's arguments that these discovery requests are irrelevant, disproportional, vague, speculative and unduly burdensome, and that the discovery is prohibited by CONN. GEN. STAT. § 38a-988 and principles of confidentiality. (Id. at 4). Plaintiffs have suggested as a compromise that disclosure be limited as follows: (1) to discovery related to claims made under XN policies to insured A.H. Robins Company for Dalkon Shield product liability loss;[4] and (2) discovery

---

[3]The following six exhibits were attached: copy of plaintiffs' Supplemental Disclosures, dated January 3, 2017 (Exh. A); copy of plaintiff's discovery response, served December 30, 2016, in the Cannon Electric litigation in California (Exh. B); copies of the Fifth Amended Complaint, filed July 24, 2012, and Sixth Amended Complaint, filed September 28, 2012, in the Cannon Electric litigation in California (Exh. C); copy of first pages of complaint, filed June 21, 2013, in Kennel v. Air & Liquid Systems Corp. et al., No. 1032, in the Circuit Court, Third Judicial Circuit, Madison County, Illinois (Exh. D); copy of excerpt from electronic docket sheet in Kennel litigation in Illinois (Exh. E); and redacted affidavit from an attorney, executed on December 1, 2016 (Exh. F).

[4]In their letter, plaintiffs have cited to three lawsuits commenced by Aetna or Travelers regarding these XN policies with respect to the Dalkon Shield product liability losses. (Id.).

related to asbestos-related products liability claims made under XN policies such that, of the twenty-seven XN policyholders with asbestos-product liability claims for which it has made payments under XN policies, defendant need only respond to twelve of them, namely, the first six and the last six policyholders for which Travelers paid asbestos products claims, as an initial disclosure, without prejudice to seeking the remaining fifteen claims.  (Id. at 4-5).[5]

In addition, plaintiffs seek discovery related to certain documents for which they moved to compel production prior to the case having been stayed due to the pendency of the California lawsuit in 2014.  (Id. at 5, citing Dkt. #126, at 71-72, 74).  Plaintiffs seek production of the "Wigmore Memo," upon which Judge Meyer has not ruled.  (Id., citing Dkts. ##127-28).  Lastly, plaintiffs contended that they were in the process of amending their Rule 26(a) disclosures regarding damages, and would provide non-privileged supporting documentation.  (Id.).

In its letter, dated December 22, 2016 (Dkt. #187), defendant argues that plaintiffs have misused the discovery process in having served 520 Requests for Admission, Judge Meyer already has denied many of plaintiffs' Requests for Production at issue here and already found that the discovery sought is overly broad, intrusive, and burdensome, and defendant is willing to abide by the decision in the California litigation so this lawsuit is "needless." (Id. at 1-2, citing Dkts. ##125, 184 (Exh. C, at 21-26; Exh. D, at 15-19;  Exh. E, at 71-75)).  Defendant further objects to plaintiffs' proposed compromise as even the limited request is "extraordinar[ily] burdensome and intrusive[,]" and would still leave the discovery dispute unresolved in that it preserves the opportunity for plaintiffs to seek additional files.  (Id. at 2).  Defendant also contends that Judge Meyer already denied

---

[5]Plaintiffs have cited to three decisions in this district where similar orders have been entered.  (Id. at 5).

production of the Wigmore Memo.  (Id., citing Dkts. ##125, 127-28, 184 (Exh. E, at 74)).  Lastly, defendant argues that plaintiffs' promise to provide copies of invoices for costs incurred in the Cannon litigation in California still does not satisfy their burden to provide computations of their damages under FED. R. CIV. P. 26(a)(1)(A)(iii).  (Id. at 1).

In its letter, dated January 11, 2017 (Dkt. #189),[6] defendant referred to other lawsuits in which plaintiffs' counsel has been criticized for "playing the dual role of coverage counsel and defense counsel for a different policyholder[,]" and argued that defendant's other policyholders have legitimate expectations of privacy and confidentiality (id. at 2-4 & Exhs. C-F), and that plaintiffs have failed to demonstrate any "legally cognizable 'ascertainable loss'" required to maintain a CUTPA claim.  (Id. at 1-2 & Exhs. A-B).

Two days later, plaintiffs' letter (Dkt. #190) responded by arguing that the Illinois lawsuit, in which four of the named defendants have XN policies issued by Travelers, demonstrates that "Travelers appears to have treated some of those similarly situated XN policyholders differently[,]" so that discovery on "bad faith . . . is directly relevant."  (Id. at 1).  In addition, plaintiffs replied that defendant's challenges to plaintiffs' damages are "best resolved through a substantive motion, rather than this discovery proceeding."  (Id.).

## II.  DISCUSSION

At the outset, the Magistrate Judge rejects defendant's argument that Judge Meyer already denied plaintiffs' requests for this discovery during his prior discovery conferences in May 2014, June 2014, October 2014, November 2014, and August 2016.  (Dkts. ## 102, 117, 126, 154, 169; see also Dkt. #169).   While defendant is correct that Judge Meyer stated on November 25, 2014 that he was denying plaintiffs' motion "in substantial part[,]"

---

[6]The Magistrate Judge has not docketed the exhibits in that they may contain confidential information; they may be filed under seal in the future, if necessary.

he immediately added that he "was going to make this denial, however, subject to exceptions or conditions[,]" which included that if "the California Court of Appeals rules . . . adverse to Travelers[,]" then he may decide that "it's time to have a fuller range of discovery in this action, and . . . plaintiffs would not be prejudiced in that instance." (Dkt. #126, at 71-73).

## A. PROPORTIONALITY, RELEVANCE AND BURDENSOMENESS

Given the enormous sums potentially at issue in this litigation, defendant's proportionality argument rings hollow. Travelers argues that plaintiffs' requests for admissions relating to the XN policies issued to A.H. Robins in connection with the Dalkon Shield product liability cases are irrelevant. While the A.H. Robins XN policies concern a different product, plaintiffs' claims turn not on the product related to the XN policy, but on the intent of the XN policies' underwriters' and on Travelers' interpretations of the scope of coverage for the XN policies. Plaintiffs' requests for admissions about the A.H. Robins policies, under which plaintiffs allege that Travelers first paid an XN claim, are relevant because they reflect Travelers' understanding of how these policies worked at a much earlier time. Accordingly, to the extent that plaintiffs only make requests for admissions and not document demands on this subject, these requests are relevant to plaintiffs' claims that Travelers has changed its interpretation of the coverage position of the XN policies over time. (Dkts. ##186 and 183-2, Requests for Admission, dated August 2, 2016, at 2-3).

Regarding the compromise proposed by plaintiffs related to the XN policies issued to twenty-seven other policyholders who are facing asbestos-related product liability claims, the Magistrate Judge agrees with defendant that it would be unduly burdened if, after reviewing the first six and last six files, plaintiffs additionally requested production of the remaining

fifteen policies. Defendant appropriately argues that it should not be forced to review these files twice. Instead, unless counsel agree otherwise, the Magistrate Judge orders defendant to produce eighteen of these files (which constitute two-thirds of the twenty-seven files) -- in chronological order, numbers 1-2, 4-5, 7-8, 10-11, 13-14, 16-17, 19-20, 22-23, 26-27. Any request by plaintiffs for additional production of the remaining nine insurance files will require demonstration of "compelling and substantial need" addressing why production of the eighteen insurance files is insufficient.

### B. CONFIDENTIALITY

The Magistrate Judge agrees with plaintiffs that CONN. GEN. STAT. § 38a-988 does not bar production of these documents. See Pike v. Anderson, No. X01 CV 10165364S, 2002 WL 31304235 (Conn. Super. Ct. Sept. 18, 2002). However, to the extent that there are protective orders or confidentiality agreements regarding these eighteen insurance files, or sensitive personal matters that deserve protection, production, is of course, subject to the Protective Order in place in this case. (Dkt. #119). In addition, defendant may redact the names of the claimants and its insureds, as appropriate, substituting the parties' actual names or initials.[7]

### C. THE WIGMORE MEMO

Plaintiffs' Document Request No. 11 seeks the production of a document described as the "Wigmore Memo" in Travelers Cas. & Surety Co. v. Insurance Co. of North America, 609 F.3d 143, 152 (3d Cir. 2010)["INA"]. The Wigmore Memo, commissioned by Timothy Yessman at Travelers, requested Mark Wigmore, Vice-President and Associate General

---

[7]Moreover, to the extent that defendant seeks an in camera review of some of the documents to be produced, the parties are free to seek the assistance of a Special Master, whose fee will be borne by the parties.

8

Counsel of the reinsurance department, to produce a memo exploring "the reinsurance implications of different coverage scenarios for the breast implant claims" submitted under an XN policy. (Dkt. #115, at 8; Dkt. #127, at 2). Defendant has withheld this production claiming that it is protected by the attorney-client privilege and the attorney work product doctrine.

The bickering over production of the Wigmore Memo has a protracted history beginning in 2014 when plaintiffs included it in their Motion to Compel Production. (Dkt. #115, at 8-10). Plaintiffs argued that because the Wigmore Memo had been extensively quoted in an opinion issued by the Third Circuit, namely the INA case, a claim of privilege with respect to the contents of the memo was waived. (Id. at 9). Additionally, plaintiffs argued that even assuming, arguendo, that the production in INA was compelled and thus did not result in a waiver of privilege, there was subsequently a waiver of privilege when Travelers allowed the document to be introduced as evidence and provided testimony on the substance of the document, and the Third Circuit quoted from it extensively. (Id.). Defendant responded that the production of the Wigmore Memo in INA did not constitute a waiver because the production was non-voluntary and ordered by the court, and the files in the INA reinsurance cases are sealed. (Dkt. #118, at 9).

The Wigmore Memo was subsequently discussed at the discovery hearing before Judge Meyer on November 25, 2014. (Dkt. #126). Judge Meyer indicated that he did not "have quite enough with respect to the Wigmore [M]emo[]" and he "still ha[d] questions about the theories by which the Wigmore [M]emo is in fact privileged, [and] why that privilege has not otherwise been waived[.]" (Id. at Tr. 74). He asked Travelers' counsel to submit a supplemental letter brief "that firmly establish[es] the basis for the privilege claim

of the Wigmore [M]emo, . . . whether it's been waived by means of its production, . . . whether somehow there's collateral estoppel, . . . and with respect to Mr. Luttinger's claim . . . [whether there is] affirmative waiver in that context." (Id.).

On December 5, 2014, Travelers submitted their supplemental letter brief on these issues arguing: that the Wigmore Memo contains Travelers counsel's confidential mental impressions and is protected by the attorney-client privilege and work product doctrine; Travelers has not voluntarily or inadvertently produced the Wigmore Memo; Travelers production of the Wigmore Memo in the INA Reinsurance Litigation was compelled and did not waive claims of privilege for the document; and the prior ruling compelling the production of the memo in the INA case has no collateral estoppel effect in this case. (Dkt. #127, at 1). Plaintiffs responded by letter brief on December 12, 2014, arguing that Travelers has failed to meet the prerequisites of a valid claim of privilege — establishing that the Wigmore Memo was prepared for the predominant purpose of communicating legal advice or in anticipation of litigation — and that any privilege that might have applied in the INA reinsurance litigation was waived by Travelers' failure to take all necessary remedial steps to preserve privilege after production of the Wigmore Memo was compelled. (Dkt. #128, at 1-5). To date, Judge Meyer has not ruled on the Motion to Compel the Wigmore Memo.

When this Magistrate Judge, upon referral, sought letters setting forth outstanding discovery disputes (Dkt. #182), Travelers' letter characterized plaintiffs' arguments about the Wigmore Memo as an attempt to "re-litigate their motion to compel," and asserted that Travelers' opposition to plaintiffs' Motion to Compel Production of the Wigmore Memo was "well taken." (Dkt. #184, at 6, 8, citing Dkts. #118, 127). According to Travelers, the motion

was denied because "Judge Meyer in his ruling denying ITT's and Goulds' motion to compel [the Wigmore Memo] ordered supplemental briefs on this issue, and having considered that briefing, he made no change to his order denying the motion." (Dkt. #187, at 2, citing Dkts. ##184, 127, 128.) However, as plaintiffs rightly noted in their letter brief in response, plaintiffs' Motion to Compel Production of the Wigmore Memo is still pending. (Dkt. #188, at 5).

When this Magistrate Judge held a discovery conference on January 4, 2017, Travelers requested, and was given, an additional opportunity to provide briefing on these issues before this Magistrate Judge issued a ruling on the outstanding discovery issues. On January 11, 2017, Travelers submitted a letter brief that did not address the Wigmore Memo. (Dkt. #189).

Although the parties dispute the status of the Motion to Compel the Wigmore Memo, Judge Meyer specifically set aside this issue at the November 2014 hearing pending more briefing, and in fact, indicated that Travelers still needed to "firmly establish the basis for the privilege claim" and demonstrate "why that privilege has not otherwise been waived." (Dkt. #126, at Tr. 74). In light of Judge Meyer's request for additional briefing on this topic, the issue clearly remains pending and any claim by Travelers to the contrary is not supported by the procedural history.

Despite being asked to do so by both Judge Meyer and this Magistrate Judge and having multiple opportunities to do so, Travelers has failed to establish the basis for a privilege claim as to the Wigmore Memo. As plaintiffs observed back in 2014, in Connecticut the "burden of proving facts essential to the [application of the work product or attorney-client] privilege is on the person asserting it[,]" State v. Hanna, 150 Conn. 457, 466

(1963)(multiple citations omitted), and Travelers must establish that "the Wigmore Memo was prepared for the predominant purpose of communicating legal advice or in anticipation of litigation." (Dkt. #128, at 1). Travelers acknowledges that for a privilege to apply, "(1) the attorney must be acting in a professional capacity for the agency, (2) the communications must relate to the legal advice sought by the agency from the attorney, and (3) the communications must be made in confidence." (Dkt. #127, at 2, citing PAS Assocs. v. Twin Lab, Inc., No. CV 990174428S, 2001 WL 1659466, at *4 (Conn. Super. Ct. Dec. 5, 2001)). But instead of demonstrating that the Wigmore Memo meets those prerequisites, and particularly the second requirement, Travelers makes a conclusory assertion:

> The Wigmore Memo meets the criteria for protection under the attorney-client privilege and work product doctrine. Travelers has treated the Wigmore Memo as a confidential document. Travelers identified it on its privilege log in the INA Reinsurance Action as an undated memorandum prepared by Mr. Wigmore protected by the attorney-client privilege and work product doctrine. . . . The Third Circuit observed that the Wigmore Memo speculated regarding potential litigation or arbitration with Travelers reinsurers.

(Dkt. #127, at 2-3)(citations omitted).  As there is no "total bar to discovery of any and all transactions and contacts that involve an attorney and a client,' but only as to such confidential communication made for the purpose of seeking or giving legal advice[,]" (Dkt. #128, at 1-2, citing W. Hartford v. Taubman Ctr., Inc., 2009 WL 1578485 at *2 (Conn. Super. 2009), citing Olson v. Accessory Controls & Equip. Corp., 254 Conn. 145, 158 (2000)), Wigmore's job title as Associate General Counsel is insufficient to establish privilege.

Travelers has had multiple opportunities, and has been specifically asked by Judge Meyer, to establish the basis for its privilege claim of the Wigmore Memo. Its failure to do so has resulted in Travelers withholding the Wigmore Memo for years without establishing

the basis for doing so. However, in an abundance of caution, the Magistrate Judge orders an <u>in camera</u> review of this single document before ordering production thereof to plaintiffs. Defendant shall provide a copy of the Wigmore Memo **on or before February 13, 2017**.

### D.  SPECIFIC DISCOVERY REQUESTS

Having reached the above-referenced conclusions, and utilizing the chart found on page 3 of plaintiffs' December 22, 2016 letter (Dkt. #188), the Magistrate Judge rules as follows:

(1) <u>Plaintiffs' First Set of Interrogatories and Document Requests, dated May 2014:</u>

Defendant need not respond to Interrogatories Nos. 5-6; defendant shall respond to Interrogatory No. 7; defendant shall respond to Interrogatories Nos. 8-11 to the extent they pertain only to the eighteen asbestos product liability claims specified above and No. 10 is further limited to fifteen years, not twenty-five years; defendant shall respond to Document Requests Nos. 1, 4, 5, 9 and 12 with respect to only the eighteen asbestos product liability claims specified above; and with respect to Document Request No. 11, defendant shall provide a copy of the Wigmore Memo to this Magistrate Judge's Chambers for her in camera review **on or before February 13, 2017**.

(2) <u>Plaintiffs' Requests for Admission, dated July 28, 2016</u>:

Defendant need not respond to Nos. 1-2 as its responses in its Supplemental Responses, dated October 10, 2016 are sufficient, but shall respond to Nos. 4 and 26 with respect to only the eighteen asbestos product liability claims specified above;

(3) <u>Plaintiffs' Requests for Admission, dated July 29, 2016</u>:

Defendant need not respond to No. 6 as its response in its Supplemental Response, dated October 17, 2016 and November 3, 2016, is sufficient;

(4) <u>Plaintiffs' Requests for Admission, dated August 2, 2016</u>:

Defendant shall respond to Nos. 1-9, and shall respond to Nos. 10-27 only if any XN policyholders specified in these Requests for Admission are within the eighteen asbestos product liability claims specified above;

(5) <u>Plaintiffs' Request for Admission, dated August 5, 2016</u>:

Defendant shall respond to Nos. 1-2, and No. 24 only with respect to the eighteen asbestos product liability claims specified above, and need not respond to Nos. 5, 6, 8, 12-23, 25-27, 30-32, 34 and 36 as its responses in its Response, dated September 9, 2016 and Supplemental Response, dated October 10, 2016, are sufficient;

(6) <u>Plaintiffs' Document Demands, dated August 5, 2016</u>:

Defendant shall respond to No. 2, but such production shall be "attorneys' eyes only" unless modified by counsel or otherwise ordered by the Court;

(7) <u>Plaintiffs' Request for Admission, dated August 17, 2016</u>:

Defendant shall respond to Nos. 1-20, 15-20, 21-37, but only to the extent that any of the six specific XN policyholders in those Requests for Admission are within the eighteen asbestos product liability claims specified above;

(8) <u>Plaintiffs' Requests for Admission, dated August 31, 2016</u>:

Defendant shall respond to Nos. 1-4, but such production shall be "attorney's eyes only" unless modified by counsel or otherwise ordered by the Court;

(9) <u>Plaintiffs' Requests for Admission, dated October 5, 2016</u>:

Defendant shall respond to Nos. 1-226 only with respect to the eighteen asbestos product liability claims specified above; and

(10) <u>Plaintiffs' Document Demands, dated October 12, 2016</u>:

Defendant need not respond to Nos. 1-2 as they appear to be irrelevant.  See also paragraph 3 supra.

Unless counsel agree otherwise, defendant shall respond, as directed above, **on or before March 3, 2017**.

Lastly, the Magistrate Judge agrees with plaintiffs that any issues regarding damages ought to be raised in a substantive motion to be addressed by Judge Meyer, and not in the context of a discovery dispute.

This is not a Recommended Ruling, but a ruling on a non-dispositive motion, the standard of review of which is specified in 28 U.S.C. § 636; FED. R. CIV. P. 6(a) & 72; and Rule 72.2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

See 28 U.S.C. § 636(b)**(written objections to ruling must be filed within fourteen calendar days after service of same);**  FED. R. CIV. P. 6(a) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Impala v. United States Dept. of Justice, 2016 WL 6787933 (2d Cir. Nov. 15, 2016)(summary order)(failure to file timely objection to Magistrate Judge's recommended ruling will preclude further appeal to Second Circuit); cf. Small v. Sec'y, H&HS, 892 F.2d 15, 16 (2d Cir. 1989)(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).

Dated at New Haven, Connecticut, this 27th day of January, 2017.


　　　　　　　　　　　　　　　　　　　　/s/ Joan G. Margolis, USMJ
　　　　　　　　　　　　　　　　　　Joan Glazer Margolis
　　　　　　　　　　　　　　　　　　United States Magistrate Judge