IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------x
                                :

ITT CORPORATION ET AL.             :          3:12 CV 38 (JAM)
                                :
v.                                   :
                                :
TRAVELERS CASUALTY & SURETY CO.  :          DATE: MARCH 24, 2017
                                :
---------------------------------------------------------x

<u>RULING ON NON-PARTY JOHN HAKE'S MOTION FOR PROTECTIVE ORDER</u>

The factual and procedural history behind this litigation is set forth in considerable detail in this Magistrate Judge's Ruling on Pending Discovery Issues, filed January 27, 2017 (Dkt. #191), 2017 WL 385034, Ruling on Pending Discovery Issues Regarding Depositions, filed February 14, 2017 (Dkt. #202), 2017 WL 589192, Ruling Following <u>In Camera</u> Review of Wigmore Memo, filed February 27, 2017 (Dkt. #203), 2017 WL 750693, and Ruling Following <u>In Camera</u> Review of Waisman and Sennott Documents, filed March 16, 2017 (Dkt. #212), 2017 WL 1020970.

The issues raised in the pending motion have their genesis in defendant Travelers' "Request for Telephonic Conference with the Court to Address Dispute Regarding Plaintiffs' Counsel's <u>Ex Parte</u> Communications with Travelers' Former Employee with Information Protected by Travelers' Attorney-Client Privilege and Attorney Work Product and Plaintiffs' Refusal to Take Off Calendar Former Employee's Deposition They Noticed for September 8, 2016," filed August 25, 2016 (Dkt. #156), regarding Travelers' former employee, John Hake, whose documents appeared on defendant's privilege log. Plaintiffs responded on September 9, 2016 (Dkt. #162; <u>see also</u> Dkts. ##157, 163, 167, 174, 176), as to which defendant filed its reply brief three days later. (Dkt. #166; <u>see also</u> Dkts. ##164-65, 176). U.S. District Judge Jeffrey Alker Meyer held a telephone discovery conference on September 13, 2016,

following which counsel were to submit proposed scripts for information to be provided when counsel contacts a former employee of an opposing party. (Dkts. ##168-69, 172; see also Dkts. ##170-71, 173).

On February 8, 2017, non-party John Hake filed the pending Motion for Protective Order, with brief and exhibits in support. (Dkt. #195).[1]  On March 2, 2017, Travelers filed its brief, affidavit and exhibits in opposition, both redacted and unredacted (under seal). (Dkts. ##204, 207-08; see also Dkts. ##205-06).[2] Thirteen days later, Hake filed his reply

---

[1]The eleven exhibits are as follows: Affidavit of Attorney Louis Wade, sworn to February 8, 2017 (Exh. 1); copy of defendant's Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, dated November 4, 2016, directed to John Hake (Exh. 2); copy of defendant's Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, dated December 29, 2016, directed to John Hake (Exh. 3); copy of defendant's Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, dated November 23, 2016, directed to Meadowbrook, Inc. Custodian of Records (Exh. 4); copy of defendant's Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, dated December 7, 2016, directed to Bonnie Sweeney, Custodian of Records, Casualty Reciprocal Exchange in Liquidation and Equity Mutual Insurance Company in Liquidation (Exh. 5); copy of defendant's Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, dated November 23, 2016, directed to Kemper Corporation, Custodian of Records (Exh. 6); copy of defendant's Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, dated December 8, 2016, directed to Joyce M. Swiatek, Legal Administrator, Lumbermens Mutual Casualty Company, in Liquidation (Exh. 7); copy of Hake's Objection to Subpoena, dated November 18, 2016 (Exh. 8); copy of Hake's Objection to Subpoenas Served Upon Meadowbrook, Inc. and Kemper Corporation, dated December 7, 2016 (Exh. 9); copy of Hake's Objection to Subpoenas Served Upon Casualty Reciprocal Exchange, Equity Mutual Insurance Company and Lumbermen's Mutual Casualty Company, dated December 13, 2016 (Exh. 10); and copy of Hake's Objection to Subpoena, dated January 17, 2017 (Exh. 11).

An appendix of court decisions also was attached.

[2]The following thirteen exhibits were attached to the Affidavit of Attorney Susan Walker, sworn to March 1, 2017: copies of emails between Hake and Attorney Walker, dated October 31 and November 3 & 16, 2016 (Exhs. A, C-D); copy of email between Hake and plaintiffs' counsel, Harvey Bartle, dated October 31, 2016 (Exh. B); copies of emails between Hake, Attorney Walker and Attorney Wade, dated November 16, 2016 (Exhs. E-F); copy of draft of Hake's Objections to Subpoena, dated November 14, 2016 (Exh. G); copy of excerpts from Hake's deposition, taken on December 16, 2016 (Exh. H); copy of excerpts from Hake's deposition, taken on October 27, 2016 (Exh. I); copy of email between Attorney Lewis Melahn, counsel for Dobson Group/Meadowbrook and Attorney Walker, dated December 20, 2016 (Exh. J); copy of letter from Attorney Christopher Kennedy, counsel for Liquidator of Lumbermens, dated January 4, 2017 (Exh. K); copy of emails between Attorneys Wade and Walker, dated January 17, 2017 (Exh. L); and copy of letter

brief. (Dkt. #211).

For the reasons stated below, non-party Hake's Motion for Protective Order (Dkt. #195) is <u>granted in part and denied in part</u>.

## I. DISCUSSION

In his motion and brief, Hake requests that the Court bar the discovery sought in the First and Second Hake subpoena (Dkt. #195, Brief at 2, 3-5, 11-17), as well the subpoenas directed to his former employers, namely Meadowbrook, Kemper, Casualty and Lumbermen's. (<u>Id.</u> at 2-3, 5-8, 17-21).[3]

As set forth in Hake's brief, Hake was deposed over three days on October 16, October 28 and December 16, 2016; at the end of the second day, defense counsel asked Hake, <u>inter alia</u>, for the names and locations of all doctors who have treated him since his diagnosis with multiple sclerosis ["MS"] in 1977 until such time as he began to receive his health care from the VA Hospitals, followed by a request for copies of all of his medical records. (<u>Id.</u> at 3-4). Thereafter, defendant served two subpoenas upon Hake, requesting all medical records, provider bills, invoices, cancelled checks, tax records or any other documents identifying the name, telephone number and/or address of any of Hake's health care providers who treated him starting in 1977, when he was first diagnosed with MS; Hake, not surprisingly, has objected on the basis of undue burden and expense (especially because he is not a party to this lawsuit), confidentiality, the Kansas physician-patient privilege, and lack of relevancy. (<u>Id.</u> at 4-5, 7-8 & Exhs. 2-3, 8). Shortly thereafter, defendant served subpoenas on Hake's former employers, seeking all documents pertaining to him during his

---

agreement between Hake and plaintiffs, dated November 16-17, 2016 (Exh. M).

[3] Hake also seeks the payment of attorney's fees. (<u>Id.</u> at 21-22).

employment there, including any leaves of absences taken by him on a claimed disability or similar condition: Meadowbrook, Inc. and/or The Dodson Group, from January 1, 1995 through December 31, 2001, and Kemper Corporation and/or Lumbermens Mutual Casualty Company, from January 1, 2001 to March 31, 2003; Hake similarly has objected to these subpoenas. (Id. at 5-7 & Exhs. 4-7, 9-11).[4]

In his brief, Hake argues that this Court has jurisdiction to handle this matter (id. at 8-10); Hake has standing to raise these arguments (at 10-11); the subpoena directed to Hake is unduly burdensome in that it seeks documents covering more than thirty-nine years (at 11-12); the subpoena directed to Hake seeks information that is protected and confidential under the Health Insurance Portability and Accountability Act of 1996 ["HIPAA"] (at 12-15); the subpoena directed to Hake seeks confidential tax and financial records (at 15); the subpoena directed to Hake seeks documents that are protected by Kansas law (at 15-16); the subpoena directed to Hake seeks documents that are irrelevant and unlikely to lead to the discovery of admissible evidence, and has no bearing on Hake's credibility (at 16-17 & n.5); the subpoenas directed to Hake's other employers seek employment records that are not discoverable, in that they are irrelevant, overbroad, confidential, and meant to harass and embarrass Hake (at 17-21); and Hake requests attorney's fees for the time spent preparing this motion and brief (at 21-22).

In its brief in opposition, Travelers argues that plaintiffs' counsel contacted Hake without prior notification to defense counsel, and did not advise Hake to refrain from disclosing his prior communications with Travelers' counsel; Travelers further argues that

---

[4]There is obviously overlap for January 1 to December 31, 2001. To further complicate matters, all these employers have been acquired or absorbed by other companies, or have been liquidated. (Id. at 5-7).

Hake's deposition testimony places his medical condition at issue with respect to this credibility and reliability. (Dkt. #204, at 2-3; Dkt. #207, at 2-3 & Exhs. H-I). According to defendant, the document subpoenas served on Hake and his former employers seek information relevant to his medical condition, and Hake has "stonewalled" defendant's efforts to resolve the discovery dispute. (Dkt. #204, at 3-8; Dkt. #207, at 3-8 & Exhs. A-G, J-L). Travelers argues that Hake's medical providers' identification and his former employers' records are discoverable, relevant information, in that they are "pertinent to the credibility of his testimony in this case" (Dkt. #204, at 8-10; Dkt. #207, at 8-10), and that his privacy concerns, particularly under HIPAA, will be shielded by the protective order entered in this case. (Dkt. #204, at 10-11; Dkt. #207, at 10-11). Defendant further contends that the document subpoenas do not impose an undue burden on Hake in that they have offered him the option of providing a list of his medical providers and their contact information, rather than producing documents, and his former employers both have located documents responsive to the subpoenas served upon them. (Dkt. #204, at 11-12; Dkt. #207, at 11-12). Lastly, Travelers asserts that Hake has waived any privilege he may have had in an email between him and defense counsel, dated November 16, 2016, by having testified about it at his December 16, 2016 deposition without objection, and further that his request for attorney's fees is "baseless[,]" particularly when plaintiffs are reimbursing him for his attorney's fees. (Dkt. #204, at 12-13; Dkt. #204, at 12-13 & Exh. M).

In his reply brief, Hake argues that he did nothing to "stonewall" resolution of this dispute (Dkt. #211, at 2-3), that the Kansas physician-patient privilege protects his medical information and that he did not waive this privilege (at 4-7), that his medical information is not otherwise discoverable (at 7-8), and that defendant has failed to rebut the numerous

5

cases he cited describing the limitations on discovery of employment information (at 8-9).[5]

The brief excerpts of Hake's deposition provided to the Court reflect a witness who does have recall of events that occurred some three decades ago, although limited to some extent by his medical condition. (Dkt. #207, Exhs. H-I). Under the unusual circumstances of this case, <u>if and only if</u> plaintiffs intend to call Hake as a witness at trial, then defendant is entitled to <u>narrow</u> discovery on the extent to which Hake's medical condition has an impact on his ability to recall events. However, Hake is quite correct that the subpoenas directed to him, as presently drafted, are unduly burdensome – no adult (except perhaps one with a serious hoarding disorder) is in possession of <u>nearly four decades</u>' worth of invoices, cancelled checks, tax records, and medical records from his or her medical providers. Defense counsel has offered a compromise, namely that Hake provide a list of his medical providers and their contact information, rather than producing documents. (Dkt. #204, at 11; Dkt. #207, at 11). However, this compromise is still too burdensome, in that many adults accumulate a number of medical specialists in their lives who might have nothing to do with Hake's serious illness, such as a dentist, an opthamologist, a urologist, etc. Thus, Hake need only disclose the names and contact information of medical providers whose treatment of him was in some way related to his MS, such as his internist, neurologist, physical therapist, speech therapist, occupational therapist, etc. Moreover, if defendant intends to serve a subpoena upon any medical providers on this list, the Magistrate Judge is willing to conduct an <u>in camera</u> review of copies of these medical records, if Hake prefers, so that only medical reports pertinent to the narrow issue here would be disclosed to

---

[5]Hake also contends that attorney's fees are "proper and mandatory here[,]" despite the fact that plaintiffs "have graciously offered to reimburse him for his attorney's fees incurred in defending against [d]efendant's overreaching discovery requests." (Id. at 9-10).

defendant.

With respect to Hake's personnel files, defense counsel has represented that his former employers have located documents responsive to the subpoenas served on them. (Dkt. #204, at 11-12; Dkt. #207, at 11-12). As a judicial official who frequently has reviewed personnel files, it is extremely rare that they would include any document that is relevant to the issues in the pending litigation, particularly where, as here, the personnel files relate to a non-party. However, in light of the fact that Hake's former employers already have assembled the pertinent files, such personnel files shall be forwarded to this Magistrate Judge's Chambers, **on or before April 3, 2017** for an in camera review, in the remote chance that they include documents that would have a bearing on Hake's credibility in this litigation.[6]

## II.  CONCLUSION

Accordingly, for the reasons stated above, non-party Hake's Motion for Protective Order (Dkt. #195) is granted in part and denied in part, to the extent set forth in Section I supra.

This is not a Recommended Ruling, but a ruling on a non-dispositive motion, the standard of review of which is specified in 28 U.S.C. § 636; FED. R. CIV. P. 6(a) & 72; and Rule 72.2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

See 28 U.S.C. § 636(b)**(written objections to ruling must be filed within**

---

[6]Despite the fact that Hake's attorney's fees are being funded by plaintiffs (Dkt. #204, at 12-13; Dkt. #207, at 12-13 & Exh. M), so that he has no out-of-pocket loss from this discovery dispute, his request for attorney's fees is granted. However, given the acrimony with which this lawsuit is being litigated, the Magistrate Judge holds in abeyance all further filings regarding the amount of fees until all discovery has been completed.

**fourteen calendar days after service of same);** FED. R. CIV. P. 6(a) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; <u>Impala v. United States Dept. of Justice</u>, No. 15-3055, 2016 WL 6787933 (2d Cir. Nov. 15, 2016)(summary order)(failure to file timely objection to Magistrate Judge's recommended ruling will preclude further appeal to Second Circuit); <u>cf. Small v. Sec'y, H&HS</u>, 892 F.2d 15, 16 (2d Cir. 1989)(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).

Dated at New Haven, Connecticut, this 24th day of March, 2017.

      /s/ Joan G. Margolis, USMJ
Joan Glazer Margolis
United States Magistrate Judge