IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------x
                        :

ITT CORPORATION ET AL.          :           3:12 CV 38 (JAM)
                        :

v.                                :
                        :

TRAVELERS CASUALTY & SURETY CO.  :      DATE: AUGUST 31, 2017
                        :
---------------------------------------------------------x

## RULING ON PLAINTIFFS' MOTION TO COMPEL DEFENDANT TO RESPOND TO ORDERED DISCOVERY AND TO PRODUCE DOCUMENTS

### I. PROCEDURAL HISTORY

The factual and procedural history behind this litigation is set forth in considerable detail in this Magistrate Judge's Ruling on Pending Discovery Issues, filed January 27, 2017 (Dkt. #191), 2017 WL 385034 ["January Discovery Ruling"]; Ruling on Pending Discovery Issues Regarding Depositions, filed February 14, 2017 (Dkt. #202), 2017 WL 589192; Ruling Following In Camera Review of Wigmore Memo, filed February 27, 2017 (Dkt. #203), 2017 WL 750693; Ruling Following In Camera Review of Waisman and Sennott Documents, filed March 16, 2017 (Dkt. #212), 2017 WL 1020970; Ruling on Non-Party John Hake's Motion for Protective Order, filed March 24, 2017 (Dkt. #213), 2017 WL 1102675 ["First Hake Ruling"][1]; Ruling Following In Camera Review of Hake Personnel Records from Dodson Group, filed April 4, 2017 (Dkt. #219); Ruling Following In Camera Review of Hake Personnel Records from Kemper Insurance Companies, filed April 12, 2017 (Dkt. #223); Ruling on Non-Party John Hake's Motion for Clarification, filed May 26, 2017 (Dkt. #252); Ruling Following In

---

[1]Defendant filed a Partial Objection (Dkt. #222) to the First Hake Ruling, to the extent that attorney's fees will be awarded against defendant in the future.  (See also Dkts. ##228, 236). That objection was overruled by U.S. District Judge Jeffrey Alker Meyer on June 26, 2017, without prejudice to renew in the future, after this judicial officer files a ruling with a specific fee award. (Dkts. ##281, 292).

Camera Review of Non-Party John Hake's Medical Report, filed June 6, 2017 (Dkt. #259);

and Ruling Following Second In Camera Review of Non-Party John Hake's Medical Report,

filed July 28, 2017 (Dkt. #293).[2]

      This ruling addresses plaintiffs' pending Motion to Compel Defendant to Respond to

Ordered Discovery and to Produce Documents, filed May 12, 2017 (Dkt. #241),[3] seeking the

production of some discovery that was the subject of the January Discovery Ruling, and of

some more recent discovery. On June 2, 2017, defendant filed its brief in opposition (Dkt.

#256),[4] to which plaintiffs filed their reply brief two weeks later. (Dkt. #278).

---

[2]On August 10, 2017, defendant filed an Objection to this ruling (Dkt. #300), now pending before Judge Meyer.

[3]Thirty-two exhibits were attached to plaintiffs' brief in support of their motion (Dkt. #241-1): copies of excerpts of plaintiffs' various discovery requests and of defendant Travelers' objections and responses thereto (Exhs. 1, 5-7, 9-12, 16-21, 23-25, 28-29, 32); copies of excerpts of defendant's Form 10-K, for the years 2008, 2010, 2013 and 2016 (Exh. 2); copy of excerpt of decision in related litigation pending in state court in California (Exh. 3); communications regarding other insureds (Exhs. 4, 8, 22)(under seal; see Dkts. ##240, 242); copy of Aetna Policies Issued to Goulds and General Motors Corp. (Exhs. 13-14); copy of excerpts from deposition of Stephen Sennott, taken on April 27, 2017 (Exh. 15); copies of correspondence between counsel, dated November 11 and September 15, 2016 (Exhs. 26-27); copy of excerpts from defendant's Annual Statement to the National Association of Insurance Commissioners, for year ending December 31, 2008 (Exh. 30); and copy of excerpts from deposition of William B. Gresham, taken on December 14, 2006 (Exh. 31). (Dkts. ##241-2 to 241-33).

[4]Twenty exhibits were attached: copies of Examination Reports of Travelers Casualty & Surety Company as of December 31, 2009 and December 31, 2014 by the Connecticut Insurance Department (Exhs. B-C); copy of correspondence between Travelers and Milliman, Inc., dated March 2, 2010 (Exh. D); copies of excerpts of discovery responses in a related California case (Exhs. E, N); copy of Excess Overlay Indemnity Policy issued by Aetna Casualty & Surety Company (Exh. F); copy of endorsement, dated October 6, 1971 (Exh. G); copy of attorney's bill, dated September 30, 2010 (Exh. H); copies of correspondence between the parties, dated January 9, 2009 (Exhs. I-J); copies of decisions and briefing in related litigation pending in state court in California (Exhs. K-L); copy of excerpts of discovery responses (Exh. M); copy of pleadings in related litigation pending in state court in California (Exh. P); copy of Stock Purchase Agreement between Travelers Insurance Group Inc. and Aetna Life & Casualty Company, dated November 28, 1995 (Exh. Q); copy of defendant's Form 8-K, dated September 2, 1996 (Exh. R); redacted affidavit, dated December 1, 2016 (Exh. S); defendant's privilege and confidentiality logs, dated May 5, 2017 (Exh. T); copy of excerpts of deposition of Nancy Brownstein, taken on April 5, 2017 (Exh. U); and copy of excerpts of deposition of Shannon Mazzapica, taken on March 30, 2017 (Exh. V). (Dkts. ##256-1 to 256-19, 258-1). There was no Exh. O. Two affidavits also were attached. (Dkts. ##256-20 to 256-21). Exh. A and two affidavits were filed under seal. (Dkts. ##257-58,

## II. ISSUES PRESENTED

Plaintiffs argue that Travelers "refuses to answer [some discovery], as ordered" by the January Discovery Ruling, and that other ordered discovery was produced with "entire categories of unpermitted redactions[.]" (Dkt. #241, Brief at 1, 5)(emphasis in original).[5] Plaintiffs specifically allege that defendant "willfully violat[ed]" the January Discovery Ruling (id. at 1) with respect to Interrogatory No. 11 of Plaintiffs' First Set of Interrogatories and Document Demands, served on September 14, 2015 (Exh. 5; Dkt. #241-6); Request No. 7 of Plaintiffs' [Fourth Set of] Requests for Admission, dated August 2, 2016 (Exh. 6; Dkt. #241-7); and Requests Nos. 34, 43, 187, and 197 of Plaintiffs' [Ninth Set of] Requests for Admission, dated October 5, 2016 (Exh. 7; Dkt. #241-8). Travelers argues that its refusal to answer interrogatories with information about its litigation with other policyholders, and to redact production of other policyholders' files, permissibly protects the confidentiality of other claimants and insureds because the January Discovery Ruling allowed Travelers to "redact the names of the claimants and its insureds, as appropriate, substituting the parties' actual names or initials." (Dkt. #256, Brief at 7-8; January Discovery Ruling at 8 (footnote omitted); 2017 WL 385034, at *4 (footnote omitted)). Travelers likewise argues that plaintiffs' Requests for Admissions ["RFAs"] about coverage positions asserted by Travelers to other policyholders "are inapplicable because Travelers paid indemnity [to those policyholders] pursuant to settlements, not a coverage position." (Dkt. #256, Brief at 8).

Plaintiffs also seek to compel responses to six additional requests for discovery which Travelers refuses to produce "without substantial justification[,]" despite "five meet and

---

304, 306-07).

[5]Page numbers in this Ruling refer to those at the bottom of each page of the briefs or exhibits, and not those assigned by CM/ECF at the top of each page.

confers between the parties[.]" (Dkt. #241, Brief at 5-6). Plaintiffs seek to compel Travelers'

response to Request No. 1 of Plaintiffs' [Second Set of] Document Demands, dated August

5, 2016 (Exh. 9; Dkt. #241-10); Request No. 1 of Plaintiffs' Fourth Document Demand, dated

December 2, 2016 (Exh. 10; Dkt. #241-11); Requests Nos. 2-3 of Plaintiffs' Fifth Set of

Document Demands, dated February 3, 2017 (Exh. 11; Dkt. #241-12); and Requests Nos.

1-2 of Plaintiffs' Sixth Set of Document Demands, dated March 10, 2017 (Exh. 12; Dkt. #241-

13). Travelers argues that plaintiffs have not demonstrated a compelling and substantial

need for this discovery; the requests are irrelevant or overbroad; the subject documents are

either protected by confidentiality agreements, or publicly available; and the production of

some subject documents is prohibited by CONN. GEN. STAT. §§ 38a-14(j) and 38a-69(a). (Dkt.

#256, Brief at 9-10).

### III. DISCUSSION

#### A. CONFIDENTIALITY

The parties continue to dispute Travelers' responses to three of plaintiffs'

interrogatories discussed in the January Discovery Ruling. In Plaintiffs' First Set of

Interrogatories and Document Requests to Travelers Casualty and Surety Company,

Travelers was asked to:

> 9. IDENTIFY each INSURED that has notified [Travelers] of claims
> against it involving AGGREGATE EXPOSURES, to which [Travelers has]
> asserted that coverage under an XN POLICY only responds if the INSURED'S
> loss arises from a single accident or occurrence.

> 10. IDENTIFY each XN POLICY which is, or has been, the subject of
> LITIGATION within the last twenty-five years, including LITIGATION with
> [Travelers'] reinsurers.

> 11. Identify, by case caption, number and jurisdiction, the
> LITIGATION referenced in [Travelers'] response to interrogatory no. 9.

4

(Exh. 5; Dkt. #241-6, at 8).  Travelers objected to these interrogatories based on relevance, undue burden, and privacy claims of other policyholders, and this dispute was referred to this Magistrate Judge by Judge Meyer. (Travelers' Response to First Set of Interrogatories and Document Request, dated September 25, 2014, 13-16; Dkt. #181). Subsequently, Travelers represented that there are twenty-seven XN policyholders with asbestos-products liability claims for which it has made payments under XN policies, and plaintiffs proposed a compromise wherein Travelers respond to discovery requests related to only twelve of those policyholders. (Dkt. #188, at 4-5). Travelers argued that the proposed compromise would unfairly invade other policyholders' privacy interests in their insurance and claim information. (Dkt. #187, at 2; Dkt. #189, at 2-4).

In the January Discovery Ruling, this Magistrate Judge ordered discovery with respect to eighteen of the twenty-seven files, selected by this Magistrate Judge based upon their chronological identification number; agreed that CONN. GEN. STAT. § 38a-988 does not bar production of these documents; found that these files are subject to the Protective Order in place in this case; and, as previously mentioned, further permitted Travelers to "redact the names of the claimants and its insureds, as appropriate, substituting the parties' actual names or initials." (Dkt. #191 at 8 (footnote omitted); 2017 WL 385034, at *4 (footnote omitted)). The January Discovery Ruling further ordered that "defendant shall respond to Interrogatories Nos. 8-11 to the extent they pertain only to the eighteen asbestos product liability claims specified above and No. 10 is further limited to fifteen years, not twenty-five years[.]" (Id. at 13; 2017 WL 385034, at *6).

After the January Discovery Ruling, Travelers' Second Supplemental Response to Certain Interrogatories and Document Requests in Plaintiffs' First Set [sic] of Interrogatories

and Document Requests identified, by reference to the chronological identification number, sixteen files that were the subject of litigation, as sought in interrogatory No. 10; the two remaining case files had not resulted in lawsuits. (Dkt. #241, Brief at 2; Exh. 1; Dkt. #241-2, at 6-7). In response to interrogatory No. 11, which sought case captions, numbers and jurisdictions of that litigation, Travelers answered, "In order to protect the confidentiality of policyholders [identified by chronological identification numbers], Travelers has not identified caption, number or jurisdiction for the litigation involving their XN policies, which has been resolved by confidential settlements and/or settlements in bankruptcy proceedings." (Exh. 1; Dkt. #241-2, at 7; Dkt #241, Brief at 8-9).

Plaintiffs argue that Travelers' "refusal to respond" is "a willful violation" of the January Discovery Ruling "which unconditionally directs Travelers to respond to Interrogatory No. 11 with respect to the sixteen policyholders[]" who had been involved in litigation with defendant (Dkt. #241, Brief at 9) and that Travelers' confidentiality arguments already had been rejected by the Court in the January Discovery Ruling (id. at 12). Travelers argues that providing case captions, numbers, and jurisdictions would unmask the insureds' identity to plaintiffs, and effectively moot its permissible efforts to redact the insureds' names elsewhere. (Dkt. #256, Brief at 8, 11). However, as plaintiffs point out in their supplemental responses, Travelers already has identified seven of these sixteen policyholders (3M Corp., Kentile Floors, Viking Pump, Warren Pumps, Armstrong Contracting and Supply Corp. ["ACANDS"], Armstrong Cork, and The Flintoke Co.), and moreover, has admitted to specific identifying litigation data relating to three of them (Viking Pump, Warren Pumps, and 3M Corp.) (Exhs. 18-20; Dkts. ##241-19 to 241-21; Dkt. #241, Brief at 12-13; Dkt. #278, at 3). Thus, the motion is moot with respect to the three policyholders for which defendant

already provided litigation information (Viking Pump, Warren Pumps, and 3M Corp.). With respect to the other four policyholders identified (Kentile Floors, ACANDS, Armstrong Cork and The Flintoke Co.), given the immediate availability that anyone with internet access has to court filings throughout the country, plaintiffs have the ability to locate this information on their own initiative. Although plaintiffs argue that Travelers' confidentiality concerns are only pretext to conceal damaging evidence in other cases (Dkt. #278, at 3), this judicial officer agrees that at least with respect to some of the insureds, plaintiffs have already "demonstrated that they can locate litigation involving XN policies in the public record[,]" rendering unnecessary such disclosures by Travelers. (Dkt. #256, at 19). Thus, the balance of this portion of the ruling will focus on the remaining nine policyholders (sixteen minus seven) whose identities have not been disclosed.

Travelers further argues that unmasking the identities of other policyholders would "turn over to a potential business competitor proprietary information regarding the extent of that policyholder's asbestos problem as well as its litigation strategies in resolving those claims." (Id. at 12). Travelers' concern on behalf of its other policyholders is not purely speculative: one such policyholder provided a declaration in opposition to the Motion to Compel,[6] urging that disclosure to plaintiffs "of ACME Corporation's strategies and thought processes—conveyed in large part through confidential settlement negotiations with Travelers—would harm ACME Corporation in connection with its current efforts to prove its entitlement to coverage under policies issued by many different insurers." (Id. at 11 & Exh. S, at 3; Dkt. #256-16). Travelers is thus reasonably concerned that by effectively identifying any additional policyholders to plaintiffs, it would share information policyholders provide to

_____

[6]To maintain confidentiality of its identity, this policyholder filed its affidavit using ACME Corporation as a pseudonym.

insurers only with the expectation that it not be disclosed, "especially to other companies that may be in direct competition with its business goals." (Dkt. #256, at 12). Because ACME Corporation has expressed legitimate concerns about maintaining the confidentiality of its identity, Travelers need not provide any further identifying information about ACME Corporation.

Travelers persuasively argues that an order to answer Interrogatory No. 11 for the unidentified policyholders will moot the Court's efforts in the January Discovery Ruling to protect those policyholders' identities. In light of Travelers' responses to date, and the competing confidentiality concerns, the Court requires supplemental filings from both sides **on or before September 15, 2017**. Plaintiffs shall indicate why they require disclosure of litigation information for the eight unidentified policyholders (besides ACME Corporation), when seven policyholders already have been identified by Travelers. Defendant shall file a supplemental brief or affidavit explaining how many of these eight remaining unidentified policyholders (besides ACME Corporation) are in direct competition with plaintiffs and the nature of the "proprietary information" (Dkt. #256, at 12) that would be revealed by answers to Interrogatory No. 11.

In addition, plaintiffs allege that Travelers produced a host of documents pursuant to the January Discovery Ruling with unpermitted redactions of "policy numbers, claims related data, aggregate amounts paid under the XN policies for asbestos product liability claims, and reinsurer names." (Dkt. #241, Brief at 15-16, referring to Exhs. 8 & 22, Dkts. ##241-9 & 241-23). Plaintiffs argue that these redactions evidence Travelers' "bad faith conduct" and attempt to "thwart [p]laintiffs' investigation and to make those documents essentially unusable for depositions, motion practice, and trial[, . . . and to] deliberately

obscure data that exposes its fraud." (Id. at 16). Travelers argues that the redactions in Exhibits 8 and 22 "show that the unredacted text strikes the same balance [as previously permitted redactions in Dkts. ##191 and 203] and affords [p]laintiffs substantive information regarding the policyholders' asbestos claims without divulging their dollar amounts, percentages and other settlement information regarding their defense and settlement strategies." (Dkt. #256, Brief at 12).

The January Discovery Ruling did not invite Travelers to determine what redactions would "strike[] the same balance" as in this Court's previous rulings, but instead specifically permitted Travelers to redact the claimants' and insureds' "names, . . . as appropriate." (Dkt. #191, at 8; 2017 WL 385034, at *4). While Travelers may still redact the names of claimants and insureds for the purpose of protecting the identity of these policyholders, Travelers may not redact other claims-related data. If any additional redaction is absolutely necessary to protect the identity of policyholders, Travelers may submit the unredacted documents to Chambers for in camera review, with a short explanation as to why the proposed redactions are necessary to maintain confidentiality of the policyholder's identity, **on or before September 15, 2017**.

### B. TRAVELERS' COVERAGE POSITION ASSERTIONS TO OTHER POLICYHOLDERS

Plaintiffs seek to compel Travelers' response to five RFAs admitting Travelers "did not take the position that XN POLICY/POLICIES insuring [a particular policyholder] were only triggered if the per occurrence limits of the insurance policies underlying the XN POLICY/POLICIES insuring [that policyholder] had been exceeded." (Dkt. #241, Brief at 13-15; Exhs. 6 & 7; Dkt. #241-7, at 3; Dkt. #241-8, at 8, 9, 34, 36). Plaintiffs requested this admission with respect to five policyholders: A.H. Robins Company Incorporated (RFA No.

7 of August 2, 2016, Exh. 6, Dkt. #241-7, at 3); ACANDS (RFA No. 34 of October 5, 2016, Exh. 7, Dkt. #241-8, at 8); Armstrong Cork Company (RFA No. 43 of October 5, 2016, Exh. 7, Dkt. #241-8, at 9); the 3M Company, formerly known as Minnesota Mining & Manufacturing Company (RFA No. 187 of October 5, 2016, Exh. 7, Dkt. #241-8, at 34); and the Flinkote Company (RFA No. 196, Exh. 7, Dkt. #241-8, at 36).

Travelers answered these RFAs admitting that it "registered an indemnity payment under . . . the XN policies insuring [these policyholders] . . . pursuant to a confidential settlement agreement[,]" and "[e]xcept as admitted, this Request is inapplicable as Travelers paid the indemnity under the XN policies" pursuant to a confidential settlement agreement.[7] (Dkt. #241, Brief at 13-14; Exhs. 20-21; Dkt. #241-22, at 4-5; Dkt. #241-21, at 6-7, 9-10, 13-14, 17-18.)

In their Motion to Compel, plaintiffs argue that Travelers has not responded to the RFAs which inquire whether Travelers ever asserted a particular coverage position to these policyholders; instead, Travelers' responses relate to the circumstances under which Travelers paid these policyholders. (Dkt. #241, Brief at 14.) In its opposition to the motion, Travelers reasserts that the RFAs are inapplicable because payments to these policyholders were made pursuant to settlement, not to a coverage position. (Dkt. #256, at 8, 13).

---

[7]With respect to the Flinkote Company, Travelers admitted that it

registered an indemnity payment under one or more of the XN policies insuring Flinkote with respect to liability arising out of its products pursuant to a confidential settlement agreement and pursuant to a settlement agreement in connection with bankruptcy proceedings. Except as admitted, this Request is inapplicable as Travelers paid the indemnity under the XN policies insuring [policyholder] pursuant to a confidential settlement agreement and pursuant to a settlement agreement in connection with bankruptcy proceedings.

(Exh. 20; Dkt. #241-21, at 17-18).

As plaintiffs observe, "[t]hat Travelers settled with [a policyholder] does not answer the critical question, which is whether, before it made a payment under [a policyholder's] XN policies, Travelers told [that policyholder] that its XN policies did not respond to product losses exceeding the underlying aggregate limit." (Dkt. #241, Brief at 14). Whether Travelers paid policyholders pursuant to a settlement is irrelevant because plaintiffs' RFAs inquire "about a coverage position Travelers was obligated to disclose to its insured well before litigation and any settlement." (Id.). Because "[e]ither Travelers asserted that [coverage] position before it settled with those insureds, or it did not[,]" (Dkt. #278, at 4-5) Travelers is ordered to respond to these RFAs.

C. DISCOVERY RELATED TO ASBESTOS LOSS-RELATED RESERVES DATA

Request No. 2 of Plaintiffs' Fifth Set of Document Demands to Travelers Casualty and Surety Company Regarding Reserves, dated February 3, 2017, seeks "ALL DOCUMENTS provided to Milliman, Inc. in connection with its actuarial analysis of [Travelers'] reserving for asbestos related loss in connection with the Connecticut Insurance Department ["CID"] Examination Report as of December 31, 2009." (Dkt. #241, Brief at 22; Exh. 11; Dkt. #241-12, at 4).[8]  Travelers objected on the grounds that the documents sought are protected by attorney-client privilege and attorney work product doctrine; they include confidential information and documents protected by the privacy rights of Travelers' other policyholders; the information is not relevant; the request is overly broad and unduly burdensome; and the documents are protected by CONN. GEN. STAT. §§ 38a-14(j) and 38a-69(a). (Dkt. #241, Brief at 22; Exh. 29; Dkt #241-30, at 3-4).

---

[8]Milliman, Inc. is a consultant engaged by the Connecticut Commissioner of Insurance for its investigation of Travelers in 2009.  (Dkt. #241, Brief at 25; Dkt. #256, at 14).

<u>1. RELEVANCE AND PRIVILEGE</u>

In Connecticut, the discovery of insurance reserve information is based on relevance and privilege.  <u>U.S. Bank Nat'l Ass'n v. Lawyers Title Ins. Corp.</u>, No. CV095013702, 2010 WL 1629942, at *4 (Conn. Super. Ct. Mar. 22, 2010).  Although discovery of loss reserves is often denied because it is not relevant to the underlying cause of action, "[m]ost courts . . . are willing to permit discovery if the underlying action involves allegations of bad faith because the mind set of the insurer then becomes relevant to the underlying cause of action."  <u>Id.</u> (citation omitted); <u>see also Esposito v. Cutler</u>, Nos. LLICV146010013S, LLICV146010019S, 2015 WL 4571197, at *3 (Conn. Super. Ct. June 30, 2015)(insurance reserves were not discoverable because plaintiffs did not assert that defendants acted in bad faith).  Reserve-related discovery can be important in such cases because "[b]ad faith is a state of mind which must be established by circumstantial evidence[, . . . making the] actions of the defendant in respect to the reserve . . . relevant." <u>Groben v. Travelers Indemnity Co.</u>, 266 N.Y.S.2d 616, 619 (N.Y. Sup. Ct. 1965), <u>aff'd</u>, 282 N.Y.S.2d 214 (N.Y. App. Div. 1967).

According to plaintiffs, Travelers misrepresented, in bad faith, the coverage position of its XN policies; as such, the reserve information is relevant to "the issue of Travelers' financial motive for taking the bad faith position it did as of 2009." (Dkt. #241, Brief at 23-24).[9]  In response to plaintiffs' request for reserve information, Travelers asserts a blanket privilege objection (Travelers Casualty and Surety Company's Response to Plaintiffs' Fifth Set

---

[9]Although Travelers' objection cites two cases from non-binding jurisdictions in which courts denied motions to compel reserve related data, such cases are distinguishable in that the information was sought for the purpose of interpreting an insurance policy, and not as evidence of an insurer's bad faith conduct. (Travelers Casualty and Surety Company's Response to Plaintiffs' Fifth Set of Document Demands Served on February 3, 2017, Exh. 29, Dkt. #241-30 at 3, <u>citing Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.</u>, 24 Fed. R. Serv. 3d 762, 1991 WL 237636, at *4 (E.D. Pa. Nov. 7, 1991), and <u>Leksi, Inc. v. Fed. Ins. Co.</u>, 129 F.R.D. 99, 106 (D.N.J. 1989)).

of Document Demands Served on February 3, 2017, Exh. 29, Dkt. #241-30, at 4). However, Travelers failed to substantiate its claim of privilege, either in its discovery response or opposition brief. FED. R. CIV. P. 26(b)(5)(A)(ii).

## 2. CONN. GEN. STAT. §§ 38a-14(j) & 38a-69(a)

Travelers' primary opposition to plaintiffs' Motion to Compel Document Request No. 2 relies upon its assertion that the information sought "is within CONN. GEN. STAT. §§ 38a-14(j) and 38a-69(a)'s protection. . . ." (Dkt. #256, at 14). Section 38a-14(j) provides that:

> [a]ll workpapers, recorded information, documents and copies thereof produced by, obtained by or disclosed to the <u>commissioner or any other person</u> in the course of an examination made under this section shall be given confidential treatment, shall not be subject to subpoena and shall not be made public by <u>the commissioner or any other person</u>, except to the extent provided in subsection (i) of this section.[10]

CONN. GEN. STAT. § 38a-14(j)(2009)(emphasis added). Travelers argues that by expressly prohibiting "the commissioner or any other person[]" from making this information public, the statute shields the insurer from producing these materials in ordinary discovery. (Dkt. #256, at 14). Plaintiffs counter that based upon its usage elsewhere in the statute, "the commissioner or any other person" refers "exclusively to the CID's examiner, other insurance agencies and/or departments, and those law enforcement officials with whom the CID is

---

[10]Technical corrections approved May 31, 2017, change the words "shall be given confidential treatment," to "shall be confidential[.]" 2017 Conn. Legis. Serv. P.A. 17-15 (S.B. 946) (WEST).

CONN. GEN. STAT. § 38a-69(a) provides in relevant part:

All financial analyses, financial examination workpapers, operating and financial condition reports, concerning any insurance company . . . prepared by or on behalf of or for the use of the Insurance Commissioner or the Insurance Department examiner, shall be confidential unless such documents are otherwise a matter of public record, or the commissioner, in the commissioner's opinion deems it in the public interest to disclose or otherwise make available for public inspection the information contained in such documents.

permitted to share the documents provided by the examinee-insurer." (Dkt. #241, Brief at 26).

Based upon the submissions of the parties and the Court's independent research, there is no Connecticut case law interpreting this language in CONN. GEN. STAT. § 38a-14(j).[11] A district court interpreting a state statute must "predict how the forum state's highest court would decide the issues before [it], and, to the extent there is any ambiguity in the state statutes under consideration, . . . carefully predict how the highest court of the state would resolve the uncertainty or ambiguity." Sprint PCS L.P. v. Conn. Siting Council, 222 F.3d 113, 115-16 (2d Cir. 2000)(citations & internal quotation marks omitted). Accordingly, "this court will first turn to the principles of statutory interpretation utilized by the Connecticut Supreme Court when interpreting Connecticut state statutes." Doe v. Bridgeport Police Dept., 198 F.R.D. 325, 338 (D. Conn. 2001), modified, 434 F. Supp. 2d 107 (D. Conn. 2006).

"[I]n construing statutes, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature." Id., citing State v. Gibbs, 254 Conn. 578, 601 (2000)(citations omitted). However, when construing the text of a statute, a court shall not consider extratextual evidence if "the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results[.]" CONN. GEN. STAT. § 1-2z (2003). "[E]ven if a statute is considered clear on its face, if a literal interpretation of that statute would lead to unworkable results, resort to other aids to determine legislative intent is appropriate." Doe v. Bridgeport, 198 F.R.D. at 340 (citations omitted). "Furthermore, in construing a statute, common sense must be used, and courts will assume that the legislature intended to

---

[11]Earlier this month, however, Magistrate Judge Sarah A.L. Merriam filed a ruling construing a similar statute, CONN. GEN. STAT. § 38a-15(g). Mahon v. Chicago Title Ins. Co., 09 CV 690 (AWT), 2017 WL 3321738 (D. Conn. August 4, 2017). The Mahon ruling will be addressed in considerable detail later in this ruling.

accomplish a reasonable and rational result." <u>City of W. Haven v. Hartford Ins. Co.</u>, 221 Conn. 149, 157-58 (1992)(citations omitted).

Travelers asks this Court to find that, because the statute prohibits "the commissioner or any other person[]" from sharing information Travelers disclosed to CID in the course of an investigation, Travelers is protected from producing this information in the course of discovery in this litigation. (Dkt. #256, at 14-15). Travelers relies upon <u>Rowe v. Bankers Life & Cas. Co.</u>, No. 09 CV 491, 2011 WL 1897181 (N.D. Ill. May 18, 2011), in which U.S. Magistrate Judge Martin Ashman held that because the California Insurance Code explicitly applied to "any other person in the course of an examination made under this section[,]" an insurance company "can still stand behind the confidentiality of such a report, as well as the information submitted by the company as part of the report, as a matter of California public policy." <u>Id.</u> at *4-5, <u>citing Gallimore v. State Farm Fire & Cas. Ins. Co.</u>, 102 Cal. App. 4th 1388 (Cal. Ct. App. 2002). However, unlike the instant case, for which there is no case law interpreting this language in the Connecticut statute, Magistrate Judge Ashman in <u>Rowe</u> explicitly relied upon the <u>Gallimore</u> decision, a state court's interpretation of a state statute at issue.[12] <u>Rowe</u>, 2011 WL 1897181, at *4. In <u>Gallimore</u>, upon which <u>Rowe</u> relied, the trial court found that, unless such protection was provided,

> insurers that submit information to the Insurance Commissioner, believing it to be confidential and not usable against them in a proceeding at law, would face an unforeseen risk if some third party released such material in a public

---

[12]The appellate court in <u>Gallimore</u> reviewed the trial court's order giving an insurance company the ability to stand behind the confidentiality of documents that the insurance company had filed with the Department of Insurance. The appellate court did not rule on whether the trial court was correct that the evidentiary material was confidential and privileged. Accordingly, <u>Rowe</u>'s reliance on the appellate court in <u>Gallimore</u> is not persuasive to the extent that the appellate court only opined that the insurance company "<u>may well be correct</u> that plaintiff is relying on evidentiary matter that is both confidential and privileged and perhaps inadmissible to prove the allegations of the complaint. If so, there are other possible remedies. . . ." <u>Gallimore</u>, 102 Cal. App. 4th at 1400 (emphasis added).

15

forum. The risk, of course, would be the filing of lawsuits against insurers based upon information that was released to the Commissioner under the good faith belief that it could not be used against them. Such a result would undermine the legislative scheme that encourages the flow of that information to those in government who are responsible for overseeing the whole of the insurance industry for the benefit of the public.

Gallimore, 102 Cal. App. 4th at 1395, n.6.  Rowe and Gallimore are unpersuasive in that they both rely upon a public policy rationale that does not apply in the context of this case, where the documents sought from Travelers are its own internal documents that it previously submitted to CID.  The statutory purpose of protecting an insurer from additional risk arising from a state agency's non-consensual release of its documents, when the insurance company is complying with an insurance commissioner's investigation, has no place here where Travelers' exposure did not arise from submitting documents to CID.  Instead, Travelers seeks to use its submission of documents to CID in the course of an examination, in and of itself, as a shield to discovery. Such an interpretation is unsupported by the policy rationale.

A vast majority of courts has rejected the interpretation asserted by Travelers.  In Amtrust N.A., Inc. v. Safebuilt Ins. Servs., Inc., 186 F. Supp. 3d 278 (S.D.N.Y. 2016), U.S. Magistrate Judge James L. Cott of the Southern District of New York persuasively discussed the flaws of this interpretation in the context of a similar Montana statute:

> The language [of this statute] . . . , if interpreted literally, would provide sweeping protections to almost any record that played any part in a[n Insurance Commissioner's] examination. Ordinary business records, and copies of those records in the company's control, that were exchanged in the course of an examination would receive protection, even if the records were relevant to pending litigation and otherwise discoverable. After all, this "recorded information" (the business records) would be "disclosed to the commissioner or [another] person in the course of an examination" and, accordingly, would become "confidential" and "not subject to subpoena." . . . Under this reading, it is unclear if even a court-ordered subpoena would be sufficient to compel the production of such ordinary business records from the company.

Id. at 283 (internal citation omitted).  Additionally, in his decision, Magistrate Judge Cott

thoroughly evaluated the relevant case law in other jurisdictions and found that courts across the country "have largely declined to recognize an insurance-examination privilege, like the one the defendant[] effectively seek[s] here, when interpreting similarly worded statutes." 186 F. Supp. 3d at 283. For example, the New York Supreme Court found that "both the Illinois and New Hampshire statutes prohibited the state agency from disclosing company records, but that the statutes' protection did not extend to information in the company's control[]" because it made "no sense . . . to construe these statutes to also protect the subject of the investigation from providing discovery of documents which, but for the investigation, would be discoverable." Id. at 286, citing Continental Ins. Co. v. Garlock Sealing Tech., LLC, No. 116789/04, 2006 WL 6157628, at *8-9, 2006 N.Y. Misc. LEXIS 9430, at *9 (N.Y. Sup. Ct. Mar. 23, 2006). An insurer "is not entitled to any greater protection for its documents simply because it was the subject of an investigation and had provided its business documents to the investigative authorities." Continental Ins. Co., 2006 N.Y. Misc. LEXIS 9430, at *9.

Similarly, in Amtrust, Magistrate Judge Cott analyzed a decision written by U.S. Magistrate Judge Mary Stanley of the U.S. District Court for the Southern District of West Virginia, in which Magistrate Judge Stanley concluded that a similar West Virginia state statute does "not extend a blanket protection of confidentiality to insurance company records[,]" and that the documents could be sought "from the insurance company, but not from the Insurance Commissioner." Amtrust, 186 F. Supp. 3d at 286, citing Miller v. Liberty Mut. Fire Ins. Co., No. Civ. 2:03-2325, 2004 WL 897086, at *4 (S.D.W. Va. Apr. 27, 2004). Magistrate Judge Cott additionally relied upon a decision from the Superior Court of Rhode Island, which, in reviewing its own statute, found that if references to "the director or any other person" were interpreted literally, an insurer would be allowed "to assert a privilege

with respect to every document reviewed or disclosed to [the insurance commissioner], even if they otherwise would not be privileged." Amtrust, 186 F. Supp. 3d at 287, citing Heritage Healthcare Servs., Inc. v. Beacon Mut. Ins. Co., No. PC 02-7016, 2007 WL 1234481, 2007 R.I. Super. LEXIS 61, at *19 (R.I. Super. Apr. 17, 2007).  As the court observed in Heritage Healthcare, while the insurance statute provides "a procedural mechanism so that persons beyond the examined company's control will not cause it harm by disclosing sensitive information which may otherwise be privileged,[]" this rationale "simply has no application" where disclosure is sought directly from the examined company.  2007 R.I. LEXIS 61, at *19 (footnote omitted). Accordingly, this Court agrees that plaintiffs' interpretation, which is that insurers are not protected from producing reserve information merely because such information has been provided to an insurance commissioner, "is consistent with the majority of cases that have interpreted similar insurance-examination statutes."  Amtrust, 186 F. Supp. 3d  at 285 (multiple citations omitted).

Although Travelers asserts that Amtrust "is not soundly reasoned as it would eviscerate the statute's protection if it could be circumvented simply by seeking the confidential information from the insurer, rather than from the Commissioner or consultants appointed by the Commissioner to carry out the financial examination under the relevant statute[,]" (Dkt. #256, at 14), this argument incorrectly identifies the purpose of the statute's protection. The purpose of the statute "is not to provide a shield for examined companies to use in discovery[,]" but rather to protect company information that is in the control of CID. Amtrust, 186 F. Supp. 3d at 284. While Travelers' refusal "might accord with a hyper-literal interpretation" of the statute, like Magistrate Judge Cott in Amtrust, this judicial officer declines to shield "ordinary, otherwise-discoverable business records" just because they were exchanged as part of an insurance investigation. Id. at 287-88. Defendant's confidentiality

concerns are sufficiently addressed because this evidence, like all other evidence in this case, is subject to the provisions of the Protective Order. (Dkt. #278, at 9).

Earlier this month, U.S. Magistrate Judge Sarah A.L. Merriam filed a decision in <u>Mahon v. Chicago Title Ins. Co.</u>, No. 09 CV 690 (AWT), 2017 WL 3331738 (D. Conn. Aug. 4, 2017), construing CONN. GEN. STAT. § 38-15(g), a statute, similar to § 38a-14(j), which provides:

> All workpapers, recorded information, documents and copies thereof produced by, obtained by or disclosed to the commissioner [of insurance] or any other person in the course of an examination made under the authority of this section [regarding market conduct examinations] shall be confidential, shall not be subject to subpoena and shall not be made public by the commissioner or any other person, except to the extent provided in subsection (f) of this section.

Like the instant case, the defendant insurance company objected to plaintiffs' discovery requests in the class action regarding refinancing rates by invoking the confidentiality provisions of § 38-15(g). Magistrate Judge Merriam similarly observed that § 38-15(g) "expressly protects documents encompassed by this section from being subject to a subpoena[,]" but "there is no mention of protection from disclosure through discovery." 2017 WL 3331738, at *4. Magistrate Judge Merriam noticed the "stark contrast" with other sections of Title 38a, which "include explicit protection of certain documents from disclosure in discovery and from admission into evidence in civil actions, in addition to protection from subpoena[,]" and also explicitly provide that the documents are both confidential and privileged. <u>Id.</u>, <u>citing</u> §§ 38-137(a)(providing that documents shall not be subject to discovery or admission in evidence in any civil action), 38a-142(h)(1)(same), 38a-78(b)(8)(A)(same). As here, Magistrate Judge Merriam concluded that the phrase "any other person" applies "to any other person <u>working with the commissioner</u>, in the course of a market conduct examination." <u>Id.</u> at *5, <u>citing Heritage Healthcare</u>, 2007 WL 1234481. And as here, Magistrate Judge Merriam relied heavily upon the well-reasoned decisions in

Amtrust, Heritage Healthcare, and Miller, while distinguishing Gallimore and Rowe.  Id. at *4-8.[13]  As a result, Magistrate Judge Merriam held that the documents "related to the market conduct examination in the possession and control of [the] defendant [insurance company] are not privileged under [§ 38-15(g)] such that they are protected from disclosure in civil discovery."  Id. at *8.  This judicial officer concurs with the thorough analysis of Magistrate Judge Merriam, and the thorough analyses by other Magistrate Judges already discussed, and declines to interpret § 38a-14(j) to shield an insurance company's subject documents from ordinary civil discovery.

### 3. DISCOVERY REGARDING LOSS RESERVES OF SIX POLICYHOLDERS

Request No. 3 of Plaintiffs' Fifth Set of Document Demands to Travelers Casualty and Surety Company Regarding Reserves, dated February 3, 2017, requests all documents "that refer or relate to any reserve established under an XN POLICY issued to" plaintiffs and four other policyholders against whom Travelers has litigated its coverage position.[14] (Dkt. #241, Brief at 28; Exh. 11; Dkt. #241-12, at 4-5).  Travelers objected on the grounds that the sought documents were protected by the attorney-client privilege and attorney work product doctrine; they include confidential information and documents protected by the privacy rights of Travelers' other policyholders; the information is not relevant; the request is overly broad and unduly burdensome; and that "this discovery is inappropriate and prejudicial in that Travelers is engaged in coverage litigation with ITT, Viking Pump, Inc. and Warren Pumps LLC, and that coverage litigation between 3M Corporation and Travelers, and Kentile Floors,

---

[13]Magistrate Judge Merriam also had the benefit of some limited legislative history, id. at *5-6, none of which was disclosed by the parties with respect to the statutes at issue here.

[14]Besides the two plaintiffs here, the four other policyholders in Request No. 3 are Viking Pump, Warren Pumps, 3M Corporation, and Kentile Floors. (Dkt. #241, Brief at 28).

Inc. and Travelers, has been resolved by confidential settlement agreements." (Dkt. #241, Brief at 28; Exh. 29; Dkt. #241-30, at 5).

In its brief in opposition, Travelers claims "[i]t is well recognized that there are decisions allowing and disallowing such discovery depending on the circumstances of the case at hand." (Dkt. #256, at 15)(multiple citations omitted). That courts have both allowed and disallowed this discovery depending on the facts of the case hardly advances defendant's argument that this Court should deny such discovery in the instant case, nor is the Court persuaded by Travelers' references to <u>Rhone-Poulenc</u> and <u>Leksi</u> (<u>id.</u>; <u>see</u> note 9 <u>supra</u>), which prohibited this discovery in situations where bad faith was not alleged. <u>See</u> Section III.C.1 <u>supra</u>.

As with Document Request No. 2, Travelers fails to substantiate its assertions of privilege or establish that Request No. 3 poses any undue burden. Travelers also objects based upon concern for the confidentiality of these six policyholders. (Dkt. #241, Exh. 29; Dkt. #241-30, at 4). Two of the subject policyholders are the plaintiffs in this case, and Travelers cannot use concern for the confidentiality of plaintiffs' information as grounds to withhold such information from the plaintiffs themselves. Travelers' assertion of objections based upon "confidential settlement agreements" with two of the policyholders is unfounded, as the document request does not seek any information about settlement, nor has Travelers provided any support for refusing this request due to protective orders in litigation with ITT and other insureds.

### D. PLAINTIFFS' DOCUMENT DEMANDS RELATED TO JOHN HAKE

In Request No. 1 of Plaintiffs' Fourth Document Request, plaintiffs seek from Travelers,

[a]ll DOCUMENTS pertaining to any testimony or advice by John M. Hake

> regarding litigation in which [Travelers was] involved, including but not
> limited to any declaration, affidavit, certification, deposition and/or trial
> testimony as a fact witness called by [Travelers], or deposition and/or trial
> testimony as a corporate designee on [Travelers'] behalf pursuant to Fed. R.
> Civ. P. 30(b)(6) or any state equivalent rule or statute.

(Dkt. #241, Brief at 29-31; Dkt. #241, Request No. 1, Document Demand dated December 2, 2016, Exh. 10, Dkt. #241-11, at 5). Travelers objected to this request because it "is unlimited as to time or subject matter[,]" and "seeks irrelevant information that is remote in time from this case." (Dkt. #256, at 17; Dkt. #241, Exh. 32, Dkt. #241-33, at 3).

Hake is a third-party witness to this case who formerly worked for Aetna, prior to its acquisition by Travelers. (Dkt. #195, Brief at 1). After Hake was deposed in this action, Travelers sought extensive discovery of Hake's medical records, cancelled checks, tax records, employment records, and contact information for any health care provider who has treated him over nearly a forty-year period, from which Hake sought a protective order. (Dkt. #195, Brief at 1-8, 11-15, 17-21). This Magistrate Judge already has filed five separate rulings addressing Travelers' overly broad discovery request of this non-party's personal documents. (Dkts. ##219, 223, 252, 259, 293).

It is the ultimate chutzpah for Travelers to seek four decades of intrusive discovery into non-party Hake's medical and personnel history in an effort to impeach him (with the resultant micro-managing of discovery by this judicial officer), and then to refuse discovery about its reliance on Hake's advice because "[n]either [p]laintiffs nor Hake have made any showing that his nearly [twenty]-year old testimony has any relevance to this case." (Dkt. #256, at 17).

In the Ruling Following Second In Camera Review of Non-Party John Hake's Medical Report, filed July 28, 2017 (Dkt. #293), this Magistrate Judge ordered that "if plaintiffs decide to call Hake as a witness . . ., defense counsel is entitled to review" two of Hake's

medical progress notes. (Id. at 4). This Court now orders, as requested by plaintiffs, that if Travelers intends to use Hake's medical history "to impeach the credibility of its own former director of underwriting for XN policies[]" (Dkt. #278, at 12), then plaintiffs are entitled to discovery about the extent to which Travelers relied on Hake to testify on its behalf.

Unless otherwise altered by Judge Meyer,[15] plaintiffs are already ordered to notify defendant, in writing, at least sixty days prior to trial, of their intent to call Hake as a witness. (Dkt. #293, at 4). At that time, defendant may review Hake's two medical reports (id.); however, if and when Travelers undertakes review of these two medical reports, it shall, at the same time, provide plaintiffs with the documents sought in Request No. 1 about its previous use of Hake's testimony and advice.

## E. DISCOVERY RELATED TO 1995-96 TRANSACTION AGREEMENT[16]

On August 5, 2016, plaintiffs sought production of "[t]he agreement (including all schedules) related to THE 1996 TRANSACTION between TRAVELERS and AETNA." (Dkt. #241, Brief at 18-20; Request No. 1 of Plaintiffs' Second Set of Document Demands, dated August 5, 2016, Dkt. #241, Exh. 9, Dkt. #241-10, at 5). Plaintiffs allege that, after first refusing to produce this discovery, Travelers agreed to produce all documents demanded by this request but "produce[d] the public portion of the 1995 transaction agreement" without "any of the forty-six non-public schedules." (Dkt. #241, Brief at 18; Dkt. #241, Exh. 24, Dkt. #241-25)(emphasis in original). Plaintiffs subsequently proposed a compromise in which Travelers would produce only four of these schedules, but Travelers refused.  (Dkt. #241, Brief at 18-19 & n.11; Dkt. #241, Exh. 27, Dkt. #241-28). Plaintiffs argue that these

---

[15]See note 2 supra.

[16]The parties use both years, 1995 and 1996, to refer to this transaction, in that the negotiations and transaction itself spanned both years.

schedules are relevant evidence that Travelers "has long recognized that XN policies cover product liability loss in excess of underlying aggregate limits." (Id. at 19).

Travelers argues that the 1995-96 Transaction Agreement "is publicly available (Exhibit Q) and is further described in Travelers Group Inc.'s 8-K Report (Exhibit R), both of which demonstrate the transaction's complexity and remoteness in time and substance to [p]laintiffs' XN policies, the last of which was issued a decade before that transaction." (Dkt. #256, at 9-10).

Although Travelers alleges that the 1995-96 Transaction Agreement fails to "have any bearing" on plaintiffs' insurance policies issued nearly thirty years before the transaction (id. at 16), Travelers' understanding of the XN policies it acquired, and the associated risk, is relevant to plaintiffs' allegations of bad faith. Accordingly, the Court agrees that the four specified schedules are relevant in that they may show Travelers' recognition that XN policies cover product liability loss in excess of underlying aggregate limits. (Dkt. #241, Brief at 19). Travelers is ordered to produce the four schedules outlined in plaintiffs' proposed compromise.

In Plaintiffs' Sixth Set of Document Demands, dated March 10, 2017, plaintiffs sought production of "the indemnity agreement identified in the fourth line of page 4 of the February 27, 2017 Ruling" in Dkt. #203 and "[a]ll other indemnity agreements between [Travelers] and AETNA in connection with THE 1996 TRANSACTION AGREEMENT and concerning the risk of products liability claims under any XN POLICY(IES)[,]" as well as all documents "pertaining, concerning, and/or related to THE INDEMNITY AGREEMENT(s)." (Dkt. #241, Brief at 20-21, referring to RFP Nos. 1 and 2, at Exh. 12,[17] Dkt. #241-13, at 5). Travelers

---

[17]Plaintiffs' brief incorrectly cites to their March 10, 2017 Document Demands as Exhibit 11, instead of Exhibit 12. (Dkt. #241, Brief at 20 and (ii) Index of Exhibits).

argues that these RFPs are "improper for the same reasons as" the previous RFP, and that any RFP requesting all documents "pertaining, concerning, and/or related to the Indemnity Agreements" is unreasonable on its face. (Dkt. #256, at 10, 16-17). Plaintiffs argue "Travelers cannot reasonably claim that producing a handful of documents—i.e., four schedules, an indemnity agreement(s), and related documents—causes it undue burden." (Dkt. #241, Brief at 21).

As noted <u>supra</u>, the Court is unpersuaded by Travelers' assertions that the indemnity agreement sought in RFP No. 1 is irrelevant to plaintiffs' bad faith claims. Accordingly, Travelers is ordered to produce the indemnity agreement as sought in RFP No. 1.

However, the Court disagrees with plaintiffs' glib characterization of what is sought by RFP No. 2; a request for production of all documents "pertaining, concerning, and/or related to the Indemnity Agreement[]" could hardly be described as "a handful of documents." (<u>Id.</u>). Faithfully abiding by such an overly broad request may well "entail review of every piece of paper in Travelers' possession for potentially responsive documents." (Dkt. #256, at 17).

Plaintiffs' reply brief states that they "have made it abundantly clear that they want just the four schedules and the indemnity agreement(s)." (Dkt. #278, at 8). Accordingly, Travelers shall respond to Request No. 1 of Plaintiffs' Second Set of Document Demands, dated August 5, 2016, and RFP No. 1 of Plaintiffs' Sixth Set of Document Demands, dated March 10, 2017. As this satisfies plaintiffs' request for "just the four schedules and the indemnity agreement(s)[,]" (id.), the Court declines to order Travelers to respond to RFP No. 2 of Plaintiffs' Sixth Set of Document Demands, dated March 10, 2017, which is overbroad.

## F. PLAINTIFFS' REQUEST FOR ATTORNEY'S FEES

When a motion to compel discovery is granted, the Court must, after providing

opportunity to be heard, require the party whose conduct necessitated the motion to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. FED. R. CIV. P. 37(a)(5)(A). Because this Rule seeks to deter abusive conduct in the discovery process, there is a presumption in favor of imposing expense-shifting sanctions against a party who unsuccessfully litigates a motion to compel. Saliga v. Chemtura Corp., No. 3:12 CV 832 (VAB), 2016 WL 3093355, at *1 (D. Conn. June 1, 2016)(Martinez, MJ)(citations omitted). The need for expense-shifting sanctions here is clear based upon the protracted discovery thus far supervised by this Magistrate Judge. An award of expenses is mandatory unless "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Mirlis v. Greer, No. 3:16 CV 678 (MPS), 2016 WL 7013452, at *1 (D. Conn. Nov. 30, 2016)(Martinez, MJ), quoting FED. R. CIV. P. 37(a)(5)(A). Rule 37(a)(5)(C) provides that if a motion for an order compelling discovery is granted in part and denied in part, the court may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion. Plaintiffs previously attempted to resolve these discovery disputes without court intervention, and defendant has not posited other circumstances that would make an award of expenses unjust. Where plaintiffs' motion was granted, defendant's nondisclosures were not substantially justified, particularly where they had already been ruled upon by this Magistrate Judge. As this ruling grants in part and denies in part plaintiffs' motion, plaintiffs are entitled to attorney's fees associated with the parts of their motion that are granted. However, as before, the Magistrate Judge holds in abeyance all further filings regarding the amount of fees until all discovery has been completed.

IV. CONCLUSION

Accordingly, for the reasons stated above, plaintiffs' Motion to Compel Defendant to Respond to Ordered Discovery and To Produce Documents (Dkt. #241) is granted in part and denied in part as follows:

(1) The Court holds in abeyance the issue with respect to Interrogatory No. 11 of Plaintiffs' First Set of Interrogatories and Document Demands, served on September 14, 2014, pending supplemental briefing by both sides **on or before September 15, 2017**;

(2) Defendant shall produce Exhibits 8 and 22 unredacted, unless any individual redaction is absolutely necessary to protect the identity of a policyholder. In such a case, Travelers must submit to Chambers for in camera review, **on or before September 15, 2017**, the unredacted document with a short statement justifying the redaction as truly necessary to maintain confidentiality of the policyholder's identity;

(3) Defendant shall respond to RFA No. 7 of Plaintiffs' Requests for Admission, dated August 2, 2016, and RFA Nos. 34, 43, 187 and 196 of Plaintiffs' Requests for Admission, dated October 5, 2016, **on or before September 29, 2017**;

(4) Defendant shall respond to Request No. 1 of Plaintiffs' Second Set of Document Demands, dated August 5, 2016 **on or before September 29, 2017**;

(5) Defendant shall respond to Plaintiffs' Document Demand No. 1, dated December 2, 2016, if and when it undertakes review of Hake's two medical reports in accordance with the Ruling Following Second In Camera Review of Non-Party John Hake's Medical Report (Dkt. #293);

(6) Defendant shall respond to requests Nos. 2 and 3 of Plaintiffs' Fifth Set of Document Demands to Travelers Casualty and Surety Company Regarding Reserves, dated February 3, 2017 **on or before September 29, 2017**;

(7) Defendant shall respond to Request No. 1 **on or before September 29, 2017**,

but need not respond to Request No. 2 of Plaintiffs' Document Demands, dated March 10, 2017;

(8) Plaintiffs' request for attorney's fees and costs for having brought this motion, is granted in part and denied in part, consistent with Rule 37(a)(5)(C), with all further filings held in abeyance until the end of all discovery.

This is not a Recommended Ruling, but a ruling on a non-dispositive motion, the standard of review of which is specified in 28 U.S.C. § 636; FED. R. CIV. P. 6(a) & 72; and Rule 72.2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

See 28 U.S.C. § 636(b)**(written objections to ruling must be filed within fourteen calendar days after service of same);** FED. R. CIV. P. 6(a) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Impala v. United States Dept. of Justice, No. 15-3055, 2016 WL 6787933 (2d Cir. Nov. 15, 2016)(summary order)(failure to file timely objection to Magistrate Judge's recommended ruling will preclude further appeal to Second Circuit); cf. Small v. Sec'y, H&HS, 892 F.2d 15, 16 (2d Cir. 1989)(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).

Dated at New Haven, Connecticut, this 31st day of August, 2017.


  /s/ Joan G. Margolis, USMJ
Joan Glazer Margolis
United States Magistrate Judge